IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

IN RE: : Case No. 1:19-bk-03915-HWV
  INFRASTRUCTURE SOLUTION :
SERVICES, INC. :
: Chapter 11

## SECOND AMENDED PLAN OF REORGANIZATION OF
## INFRASTRUCTURE SOLUTION SERVICES, INC.

Infrastructure Solution Services, Inc. (the "Debtor" or "ISS") proposes the

following Plan of Reorganization (the "Plan") with respect to its Chapter 11 case:

## ARTICLE I
## DEFINITIONS

Set forth below are various terms which shall, except where the context otherwise

requires, have the respective meanings listed herein. All of the following meanings shall

be applicable to the singular and plural forms of the following defined terms:

**1.1.**

    **Ally Financial or Ally** shall mean a creditor who provided financing to the Debtor

for a Ford motor vehicle.

**1.2.**

    **Accounts Receivable** shall mean any sums owed to the Debtor for charges on

account of the Debtor providing services, rents owed to the Debtor or any other sum owed

to the Debtor as part of the Debtor's business operations.

**1.3.**

    **Administrative Claim** shall mean an administrative expense from and after

September 13, 2019, the date on which the Debtor's Chapter 11 Case commenced, which

is entitled to priority in accordance with Section 507(a)(2) of the Code and allowed under Section 503 of the Code.

**1.4.**

**Administrative Professional Claim** shall mean compensation and reimbursement of professionals, including attorneys, accountants, experts, consultants and realtors as allowed by the Court under Section 330 of the Code.

**1.5.**

**Allowed Claim** shall mean a Claim which is scheduled pursuant to the Code or stipulated of record in this Chapter 11 Case, other than a Claim scheduled as disputed, contingent or unliquidated; or which is identified in a Court approved Stipulation filed of record in this Chapter 11 Case; or which has been estimated under Section 502(c) of the Code; or which has been filed pursuant to Section 502(a) of the Code, and with respect to which no objection to the allowance thereof has been interposed within the time allowed by the Court or Bankruptcy Code; or as to which any objection has been overruled (and to the extent so overruled) by a Final Order. An Allowed Claim shall not include any interest accruing on a Claim except as specifically authorized by the Plan.

**1.6.**

**Assets** shall mean all of the Debtor's Personal Property and Vehicles as of the Petition Date.

**1.7.**

**Cash** shall mean cash and cash equivalents.

**1.8.**

**Cash Collateral Order** shall mean the Order of the Bankruptcy Court originally entered on September 23, 2019, as amended, approving the use by the Debtor of its Cash Collateral.

**1.9.**

**Causes of Action** shall mean any action, proceeding, agreement, claim, cause of action, controversy, demand, right, action, lien, indemnity, guaranty, suit, obligation, liability, damage, judgment, account, defense, offset, power, privilege, license and franchise of any kind or character whatsoever, known or unknown, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively, whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity or pursuant to any other theory of law.

**1.10.**

**Change Capital Holdings I, LLC** shall mean a party believed to have advanced funds to the Debtor which it asserts is secured upon the Debtor's Personal Property.

**1.11.**

**Chapter 11 Case** shall mean the Infrastructure Solution Services, Inc. proceeding commenced by a voluntary petition under Chapter 11 of the Code at Case No. 1:19-bk-03915-HWV in the United States Bankruptcy Court for the Middle District of Pennsylvania.

**1.12.**

**Claim** shall have the meaning as provided by Section 101(4) of the Code.

**1.13.**

**Code or Bankruptcy Code** shall mean the Bankruptcy Reform Act of 1978, as amended, 11 U.S.C. Sections 101, et seq., commonly referred to as the Bankruptcy Code.

**1.14.**

**Contingent Claim** shall mean any Claim for which the Debtor is not directly liable, is listed as contingent on the Schedules, and has not been determined otherwise by a Final Order.

**1.15.**

**Court or Bankruptcy Court** shall mean the United States Bankruptcy Court for the Middle District of Pennsylvania in which Court the Debtor's Chapter 11 case is pending.

**1.16.**

**Debtor** shall mean Infrastructure Solution Services, Inc., the Debtor in the above Chapter 11 Case.

**1.17.**

**Disputed Claim** shall mean any Claim which is listed as disputed on the Schedules, or to which an objection to the allowance thereof has been interposed, and has not been determined otherwise by a Final Order.

**1.18.**

**Disbursing Agent** shall mean Robert E. Chernicoff of Cunningham, Chernicoff & Warshawsky, P.C., or any substitute person as such law firm shall designate.

**1.19.**

**Distribution Date** shall mean the date on which distribution to Class 7 Claim holders will be paid. Such Distribution Date shall be determined by the Disbursing Agent based upon whether or not a large number of Claims are being challenged so as to make distribution unfeasable, or whether there are insufficient funds on hand to make a distribution for various reasons, including, but not limited to, the fact that a liquidation or collection of a sufficient amount of the Assets and Note (as defined below) has not occurred. The Distribution Date may also be extended based upon a determination by the Disbursing Agent that liquidation of any of the Remaining Assets is imminent such as to warrant a delay.

**1.20.**

**Effective Date** shall mean the Effective Date of the Plan which date shall be the first date of the month following sixty (60) days after the Confirmation Date becomes final, and shall not have been reversed, stayed, or adversely modified or amended. The Effective Date is as further set forth in Section 15.2 of the Plan and such date is subject to the right of the Debtor to request that the Court extend the Effective Date.

**1.21.**

**Final Distribution** shall mean a date no less than thirty (30) days after the Disbursing Agent determines, in his discretion, upon consultation with the Official

5

Committee of Unsecured Creditors, if such then exists, or if the Court so Orders, none of the Remaining Assets of the Debtor exist which have not been liquidated, or are incapable of being liquidated, or that insufficient Assets exist to justify collection or liquidation.

**1.22.**

**Final Order** shall mean an Order of the Bankruptcy Court which has not been reversed or stayed and to which:

(a) The time to appeal or seek review, rehearing or certiorari has expired and no timely appeal has been filed, or

(b) Any appeal has been finally resolved.

**1.23.**

**Fund** shall mean any benefit fund of any of the defined Unions.

**1.24.**

**H20 Infrastructure, LLC or H20** shall mean a limited liability company 100% owned by the Debtor.

**1.25.**

**Happy Endings Holdings, LLC or Happy Endings** shall mean a limited liability company formerly owned by the Debtor which is currently engaged in a Chapter 7 proceeding in the Court.

**1.26.**

**International Union of Operating Engineers or the Operating Engineers** shall mean a Union which may cover certain employees of the Debtor.

Case 1:19-bk-03915-HWV    Doc 143    Filed 08/24/20    Entered 08/24/20 13:38:55    Desc
Main Document      Page 6 of 39

**1.27.**

**ISS Management, LLC or Management** shall mean a limited liability company 100% owned by the Debtor. Management is currently involved in a Chapter 11 proceeding in the Court.

**1.28.**

**I.U.O.E of Eastern PA and DV Benefit Fund or I.U.O.E. Fund** shall mean a Union which may cover certain employees of the Debtor.

**1.29.**

**Komatsu Financial Limited Partnership or Komatsu** shall mean an entity which financed the purchase of certain equipment by the Debtor.

**1.30.**

**Laborers District Council Benefit Funds or Union Benefit Fund** shall mean a benefit fund for various Union employees of the Debtor.

**1.31.**

**Laborers Union Local 413 or Laborers Union** shall mean a Union which may cover certain employees of the Debtor.

**1.32.**

**Personal Property** shall mean the Debtor's present and future accounts receivable, chattel paper, securities, partnership interests, entity interests, documents, equipment, furniture, general intangibles, inventory, and all products and proceeds thereof.

**1.33.**

**Petition Date** shall mean September 13, 2019.

**1.34.**

**Plan** means this Plan, and as it may be modified or amended, as is applicable.

**1.35.**

**Priority Claim** shall mean a Claim, other than an Administrative Claim or Tax Claim, as to which priority in payment is asserted pursuant to Section 507(a) of the Code.

**1.36.**

**Priority Tax Claim** shall mean a Tax Claim, as to which priority in payment is asserted pursuant to Section 507(a) of the Code.

**1.37.**

**Pro Rata** shall mean the same proportion that a Claim in a particular class bears to the aggregate amount of all allowed Claims in such class.

**1.38.**

**S&T Bank** is a banking institution that is a secured creditor of the Debtor.

**1.39.**

**Tax Claim** shall mean a Claim, other than an administrative Claim or a secured Claim, as to which priority in payment is allowed pursuant to Section 507(a)(8) of the Code.

**1.40.**

**Union** shall mean one or more of the I.U.O.E., Operating Engineers or Laborers Union

**1.41.**

**Vehicle** shall mean any vehicle which is titled by an appropriate state agency.

Case 1:19-bk-03915-HWV    Doc 143    Filed 08/24/20    Entered 08/24/20 13:38:55    Desc
Main Document        Page 8 of 39

**1.42.**

**Water Logs, LLC or Water Logs** shall mean a limited liability company 100% owned by the Debtor.

**1.43.**

**Water Logs Real Property** shall mean that parcel of real property located at 10011 Sandmeyer Lane, Philadelphia, Pennsylvania.

**1.44.**

Any term which is used in this Plan which is not defined herein, but is used in the Bankruptcy Code or found in the Bankruptcy Code, has the meaning assigned to it in the Code.

## ARTICLE II
## CLASSIFICATION OF CLAIMS AND INTERESTS

**Certain Claims and interests in this Case are divided into unclassified groups and are named as Classes for convenience only as follows:**

**2.1.   Class 1.  Professional Administrative Costs.**

**2.1.1   Class 1.**  The expenses and Claims of administration for compensation and reimbursement of professionals as allowed by the Court under Section 330 of the Bankruptcy Code.

**2.2.   Class 2.  Administrative Claims.**

**2.2.1**   To the extent that they are allowed, all Administrative Claims and expenses of administration, other than those set forth in Class 1 or in any other Class, incurred during the administration of the proceeding, to the extent that same exist.

9

**2.3.    Class 3.  Priority Tax Claims.**

   **2.3.1    Class 3.**        All Claims to the extent that such are allowed pursuant to Section 507(a)(8) of the Code, and as such Claims exist on the date of the filing of the Chapter 11 Petition in this Case, including, but not limited to any Priority Tax Claims of the United States of America, Internal Revenue Service, or any  state or any local taxing authority, to the extent that any such Claim is not disputed, and entitled to priority status under the Code.  Such payment shall occur from the sale of Debtor's Assets.  Payment will occur in the order of priority under the Bankruptcy Code.

**The classified Claims and interests in this case are divided into classes as follows:**

**2.4.    Class 4.  S&T Bank**

   **2.4.1.**  S&T provided four (4) credit facilities to the Debtor as set forth below.  This Class consists of all allowed secured Claims of S&T as set forth below.

   **2.4.2.**  The first credit facility is a line of credit granted by S&T Bank on which approximately $1,000,000.00 is owed as of the Petition Date (the S&T Line of Credit").  Because of a payment from the sale of the Water Logs Real Property, the amount owed on the S&T Line of Credit is approximately $267,000.00

   **2.4.3.**  At the time of the filing of the Petition, as collateral for the S&T Line of Credit, S&T held a first priority lien on the Debtor's Personal Property, subject to any purchase money security interests.  S&T also previously held a mortgage lien upon the Water Logs Real Property, and on equipment owned by Management and Water Logs.

**2.4.4.** S&T advanced a loan to finance the purchase of a 2018 Mack Truck GU713 as secured upon such Mack Truck (the "Mack Truck Loan"), on which approximately $135,000.00 is owed.

**2.4.5.** S&T also advanced a loan for the purchase of a 2017 FX30 Vacuum Excavation System on which it is owed, as of the Petition Date, approximately $42,000.00 (the "S&T Vacuum Loan").

**2.4.5.** S&T granted a fourth loan secured on a different 2017 FX30 Vacuum Excavation System and on a 2017 T9S Ditch Witch Vac Trailer (the "S&T Ditch Witch Loan"), on which it is owed, as of the Petition Date, approximately $40,000.00. The S&T Line of Credit, S&T Mack Truck Loan, S&T Vacuum Loan and S&T Ditch Witch Loan are collectively the "S&T Loans".

**2.5     Class 5.  Change Capital Holdings I, LLC**

**2.5.1.** This Class consists of the secured Claim of Change Capital Holdings I, LLC to the extent such is allowed.

**2.5.2.** At the time of the filing of the Petition, Change Capital allegedly held a second priority lien on all of the Debtor's Personal Property, subject to any purchase money security interests.

**2.6     Class 6.  Komatsu Financial Limited Partnership**

**2.6.1** This Class consists of the allowed secured Claim of Komatsu Financial.

**2.6.2** At the time of the filing of the Petition, Komatsu held a first priority lien against certain Personal Property of the Debtor.

11

**2.7 Class 7. Ally Financial**
    **2.7.1.** This Class consists of the allowed secured Claim of Ally Financial.

    **2.7.2.** At the time of the filing of the Petition, Ally Financial held a security interest in a 2013 Ford F-150 owned by the Debtor.

**2.8 Class 8. Union and Fund Claims**

    **2.8.1** Any Claims entitled to priority pursuant to Section 507(a)(5) will be a Class 8 Claim. The Union and Fund have each filed Claims setting forth that they are entitled to priority for all of their Claims. The Fund Claim is in the amount of approximately $197,000.00, and the International Union of Operating Engineers Claim is in an amount in excess of $10,000.00

**2.9 General Unsecured Claims.**

    **2.9.1.** All other Claims which are not otherwise classified herein which are Allowed Claims, including all non-priority, unsecured Claims against the Debtor which are not disputed or contingent and are liquidated, or for which an Allowed Claim has been filed shall constitute the Class 98 unsecured Claims in this case.

**2.10 Class 10. Equity Holders.**

    **2.10.1.** The equity interest of Peter A. Burns and Corey C. Wolff, the shareholders of the Debtor. Peter A. Burns owns 60% of the Debtor, and Corey C. Wolff owns 40% of the Debtor.

Case 1:19-bk-03915-HWV    Doc 143    Filed 08/24/20    Entered 08/24/20 13:38:55    Desc
Main Document    Page 12 of 39

# ARTICLE III
## CLASSES NOT IMPAIRED OR UNCLASSIFIED
## UNDER THE PLAN

The following classes of Claims are not impaired or are not to be considered classified under the Plan:  Classes 1, 2, 3 and 8.

# ARTICLE IV
## TREATMENT OF UNIMPAIRED CLASSES OR UNCLASSIFIED CLAIMS

The Claims of each of the classes listed as unimpaired or not classified in Article III, shall be paid and satisfied as follows:

**4.1 Class 1.  Professional Administrative Claims.**

All Class 1 Claims, as allowed by the Court, shall be paid in cash on or before the Effective Date of this Plan or as otherwise agreed in writing by the claimant and the Debtor. The funds otherwise owed to professionals which the Court has not yet approved and are required by the Code to be approved by the Court shall be escrowed until necessary approvals have been obtained.  The provisions of this Section 4.1 are also subject to the terms of Article XIV of this Plan.

**4.2     Class 2.  Administrative Claims.**

**4.2.1.**  All Class 2 Claims, as allowed by the Court shall be paid as they become due in the ordinary course of business, on or before the Effective Date of this Plan, or as soon as is reasonably possible thereafter, or as otherwise agreed by the claimant and the Debtor, whichever of these dates shall occur later.  All U.S. Trustee Fees owing as of the Effective Date must be paid prior to the Effective Date.

13

**4.3. Class 3 Priority Tax Claims**

**4.3.1.** To the extent that any priority tax claims exist, all priority tax Claims in Class 3, of all taxing authorities, shall include only pre-petition taxes and interest accrued to the Petition Date only, and shall not include any tax penalties (tax penalties do not include any trust fund penalties under Section 6672 of the Internal Revenue Code). Any post-Petition payments shall be credited against any Priority Tax Claims.

**4.3.2.** All priority tax claims, will be paid in full on or before five (5) years after the Petition Date, together with interest at the rate of six percent (6%) per annum, which interest shall be begin as of the Effective Date of the Plan. Payments will also occur from the proceeds of any sale, including from the sale of any unencumbered Vehicles, in the order of priority under the Bankruptcy Code.

**4.3.3.** The Claim of the Pennsylvania Department of Revenue ("PA Revenue") is filed as secured. To the extent such Claim is secured, and proceeds from the sale of the Debtor's Personal Property are greater than the amount owed to S&T Bank as secured on the Debtor's Personal Property, then such PA Revenue secured Claim will be paid. If insufficient value exists in the Personal Property, then the Claim will be treated as a Priority Tax Claim only to the extent permitted under the Code.

**4.4. Class 8    Union and Funds Claims**

**4.4.1** To the extent that any priority Claims exist pursuant to Section 507(a)(5) of the Code, such Claims shall be paid in full from the proceeds of the liquidation sale in accordance with the priorities set forth in the Bankruptcy Code. Such payment will be

14

made subsequent to any Class 1, 2 or 3 Claims, however, prior to any Class 9 Claims. Such proceeds may include the proceeds from unsecured Vehicles.

**ARTICLE V**
**TREATMENT OF IMPAIRED CLASSES**

**5.1**    **Class 4**     **S&T Bank**

    **5.1.1.** S&T Bank advanced four (4) credit facilities to the Debtor consisting of the S&T Line of Credit; S&T Mack Truck Loan; S&T Vacuum Loan and the S&T Ditch Witch Loan.

    **5.1.2.** S&T Bank extended a loan consisting of a line of credit granted by S&T Bank to the Debtor. At the time of the Petition Date, S&T Bank was owed slightly in excess of $1,000,000.00 on the S&T Line of Credit. The S&T Line of Credit is secured on the Debtor's Personal Property, except for titled Vehicles, and S&T is second in priority to any properly perfected purchase money security interests. During the pendency of the Case, S&T Bank has been receiving interest payments on the S&T Line of Credit.

    **5.1.3.** The S&T Line of Credit will be paid up to the full amount owed on the S&T Line of Credit from the sale of the Debtor's Personal Property and the Mack Truck. Such payment will occur from the net proceeds after payment of the costs of sale in the event of a sale of the Debtor's Assets occur, and based upon lien priorities as same exist as of the Petition Date and after allowed Class 2 and 3 Claims. S&T has been paid from the sale of the Water Logs Real Property and will be paid from any assets owned by Management and Water Logs on which it has a lien. The payment to S&T shall not be greater than the amount then owed on the S&T Line of Credit, including all allowed interest, costs and fees.

15

**5.1.4.** S&T Bank extended a second loan to the Debtor to finance the purchase of a 2018 Mack Truck GU713. As of the Petition Date, approximately $135,000.00 was owed on the S&T Mack Truck Loan. The S&T Mack Truck Loan will be paid up to the full amount owed on such allowed secured Claim from the net proceeds from the sale of the Mack Truck.

**5.1.6.** S&T Bank extended a third loan to the Debtor secured on the FX30 Vacuum Excavation System (the "S&T Vacuum Loan"). As of the Petition Date, approximately $42,000.00 was owed on the S&T Vacuum Loan. The S&T Vacuum Loan will be paid up to the full amount owed on such allowed secured Claim from the net proceeds from the sale of the FX30 Vacuum Excavation System. The collateral for this loan may also be assets owned by Management, Water Logs or H20.

**5.1.7.** S&T Bank extended a fourth loan to the Debtor secured on a different FX30 Vacuum Excavation System and a 2017 T9S Ditch Witch Vac Trailer (the "S&T Ditch Witch Loan"). As of the Petition Date, approximately $40,000.00 was owed on the S&T Ditch Witch Loan. The S&T Ditch Witch Loan will be paid up to the full amount owed on such allowed secured Claim from the net proceeds from the sale of the FX30 Vacuum Excavation System and the T9S Ditch Witch Vac Trailer. The collateral for this loan may also be assets owned by Management, Water Logs or H20.

**5.1.8.** S&T shall retain its security interest and lien as it has in the Debtor's Personal Property with respect to the Line of Credit Loan and with respect the Mack Truck, the Vacuum Excavation System and the Ditch Witch Loan, in the order of priority as exists

16

pre-Petition, until such time as payment is made as set forth in this Plan, or a sale of any collateral occurs.

**5.2     Class 5.          Change Capital Holdings I, LLC**

**5.2.1.** Class 5 is the Claim of Change Capital Holdings I, LLC.

**5.2.2.** Change Capital is believed to have a security interest on the Debtor's Personal Property, which security interest is junior in priority to the lien of S&T Bank. Change Capital filed a Proof of Claim in the amount of approximately $490,000.00.

**5.2.3.** Change Capital's allowed secured Claim will be paid in such amount as is available from the sale of the Debtor's Personal Property, subsequent to payment of all allowed costs of sale and subsequent in payment of the S&T Line of Credit and payment of any purchase money security interest loans.  Such payment shall be after payment of allowed Class 1, 2 and 3 Claims.

**5.2.4.** Change Capital shall retain its security interest and lien as it has in the Debtor's Personal Property subject to the priorities as exist pre-Petition, until such time as payment is made as set forth in this Plan, or a sale of any Assets occurs.

**5.3.  Class 6.          Komatsu Financial Limited Partnership**

**5.3.1.** Class 6 is the Claim of Komatsu Financial.

**5.3.2.** Komatsu has a lien upon certain equipment for which it provided purchase money financing, including the following:

1.     Komatsu, PC 210 LCI Hydraulic Excavator, Model PC210LCI-10, Serial No. 452500, with 36" Bucket and 52" Bucket;

2. Komatsu Hydraulic Excavator PC138, Model No. PC138USLC-8, Serial no. 23146 with 24" Bucket, 36" Bucket and BTI Hyd Plate Compactor;

3. Komatsu 200 Wheel Loader, Model No. WA200-7, Serial No. 80182 with Power Latch CouplerSide Dump Bucket and Forks;

4. Komatsu Track Hoe PC 210, Model PC210 LC-10, Serial No. A10299 with Hydraulic Coupler, 48" Bucket & Hammer (1021);

5. Komatsu Wheel Loader, Model WA250-6. Serial No. 76215, with Bucket and Forks;

6. Komatsu D51 Dozer, Model No. D51 PX-22, Serial No. B13285;

7. Komatsu PC 200LC-8 Hydraulic Excavator (S/N A89235);

8. BTI BXR50 (S/N 333B50);

9. BTI TC152H Plate Compact (S/N AT3258-2);

10. Sakai SV505-1 Roller (S/N VSV16P-60102).

All of the above items are the "Komatsu Collateral".

**5.3.3.** Upon the sale of any equipment upon which Komatsu has a first priority security interest, the Debtor shall pay the net proceeds as are available from the sale of such equipment to Komatsu and based upon Komatsu's lien priority as of the Petition Date. Komatsu will be paid its allowed secured Claim in full upon a sale of the Komatsu Collateral.

**5.3.4.** Komatsu shall retain its security interest and lien as it has in the Debtor's Personal Property, subject to the priority as exists pre-Petition, until such time as payment is made as set forth in this Plan, or a sale of any Komatsu Collateral occurs, following notice to Komatsu of such sale.

18

**5.3.5** Komatsu reserves all of its rights under the contracts relating to the Komatsu Collateral and applicable law and equity, including, without limitation, its right (a) to seek adequate protection of its interests in the Komatsu Collateral, and (b) to request that this Court enter an Order lifting the automatic stay so that Komatsu may retrieve and dispose of the Komatsu Collateral.

**5.4.    Class 7.        Ally Financial**

**5.4.1.** Class 7 is the Claim of Ally Financial.

**5.4.2.** Ally provided financing for a 2013 Ford F-150 (the "Ally Vehicle"). Ally has filed a Motion for Relief from the Automatic Stay in order to repossess such Ally Vehicle.

**5.4.3.** Upon Ally being granted relief from the stay, Ally shall receive the Ally Vehicle upon which it has a lien in full satisfaction of its allowed Claim.

**5.4.4.** Ally shall retain its security interest and lien in the Ally Vehicle subject to the priority as exist pre-Petition, until such time as the Ally Vehicle is sold or repossessed.

**5.5.    Class 8.        Union and Union Fund Claims - ISS**

**5.5.1.** Class 8 are any Claims of any Union or any Union Fund which are entitled to priority pursuant to Section 507(a)(5) of the Code.

**5.5.2.** Such Class 8 Claims will be paid from the sale of any ISS Assets subsequent to payment of any Claim secured on any such Assets, the costs of any sale, and subsequent to payment of Classes 1, 2 and 3 allowed Claims. Such Assets may include any ISS unencumbered Vehicles.

**5.6.    Class 9          General Unsecured Creditors**

**5.6.1.**  Class 9 includes all other Claim holders of the Debtor who are not otherwise classified under the Plan, including all general unsecured creditors, and any Claims of other parties, regardless of the entry of judgments in favor of any such creditors.

**5.6.2.**  Upon any sale, a minimum of $10,000.00 shall be carved out for unsecured creditors (the "Carveout") to be paid fifty percent (50%) to Management creditors.  After payment in full of all Class 1 Professional Administrative costs, Class 2, Administrative Claims, Class 3 Priority Tax Claims and Class 8 priority Union and Fund Claims, the Class 9 unsecured creditors will be paid any net proceeds resulting from the sale of the Debtor's Assets, and after payment of all secured Claims and costs of any sale.  Payment to Class 9 Claim holders shall not include any post-Petition interest.

**5.7.    Class 10         Equity Holders**

**5.7.1.**  The Equity Holders will retain their equity in the Debtor only to permit the liquidation of the Assets of the Debtor and payment of any funds to the equity holders under the Plan.  All officers of the Debtor shall remain as officers and managers of the Debtor for purposes of causing the Plan to be effectuated.  In the event that all creditors are paid in full and distribution is made to the equity holders, the equity can be canceled at the option of the equity holders.  It is intended that the Debtor's affairs shall then be wound up and the Debtor shall terminate at the option of the equity holders.

Case 1:19-bk-03915-HWV    Doc 143    Filed 08/24/20    Entered 08/24/20 13:38:55    Desc
Main Document      Page 20 of 39

# ARTICLE VI
## MEANS FOR EXECUTION OF THE PLAN

**6.1     Sale of Assets**

**6.1.1.** The Debtor is selling all of its Assets. Such sale shall either occur by a private sale to one or more individuals or entities or, in the event a private sale does not occur, the Debtor intends to auction its Assets. If the private sale does not occur prior to any action, the Debtor shall notify Komatsu prior to an auction of any of the Komatsu Collateral. The sale will include the Vehicles, most of which are believed to be unencumbered. The sale may be further set forth in a Sale Motion. The sale is anticipated to occur prior to the end of 2020.

**6.2.     Final Distribution**

**6.2.1.** Prior to Final Distribution, if sufficient funds exist, the sum of $50,000.00 shall be set aside to pay ongoing administrative expenses, including professional fees for attorneys and accountants, the cost of preparing and filing interim and final tax returns, the costs of distribution. In addition, an estimated amount of fees owed to the Office of the United States Trustee shall be set aside prior to Disbursement. Thereafter, Disbursement shall be made to Class 1, Class 2, Class 3, Class 8 and Class 9 Claim holders under the Plan as set forth above. Any net proceeds from the sale of the unencumbered Vehicles will be paid to Classes 1, 2, 3, 8 and 9, in the order of priority. The Carveout will be utilized for creditor payments. Distribution shall only occur if it is determined by the Disbursing Agent that funds are on hand to make such Disbursement in an economically feasible manner. As Section 1.19 of the Plan provides, in the event that Distribution is not justified,

21

the Distribution Date may be extended from time to time. Upon the determination by the Disbursing Agent that collection of any further funds from the Remaining Assets is not viable and collectable, and that Claims have been sufficiently fixed, then Final Distribution shall occur within a reasonable period of time thereafter as determined by the Disbursing Agent. The Disbursing Agent shall be permitted reasonable compensation for services in connection with Distributions. Prior to final Distribution, an amount shall be estimated which will be necessary to pay all administrative expenses, including the costs of disbursing funds. Any funds over and above the estimated amount shall be part of the Final Distribution.

## ARTICLE VII
## EXECUTORY CONTRACTS

**7.1. Union Contract.**

The Debtor has one or more Collective Bargaining Agreements with a Union. Such Agreements are rejected upon the Effective Date of the Plan.

**7.2 Insurance**

Any of the Debtor's insurance contracts as to liability, casualty and property are assumed upon Confirmation of the Plan and shall remain in full force and effect until such time as terminated by the Debtor or upon any particular asset which is the subject of the insurance policy being liquidated. Any of the Debtor's insurance contracts for health insurance shall be deemed assumed to the extent that any exist and shall continue until the Debtor terminates same or terminates operations.

**7.3    Employment Agreements**

Any employment agreements are rejected as of the Effective Date of the Plan.

**7.4    Miscellaneous**

Any agreements for licenses, web hosting, energy demand, provision of utilities or cellular telephones shall be rejected as of the Effective Date of the Plan, to the extent that any such exist.

**7.5.    Arrearages**

Any lessor to the Debtor, or contract party which believes it may have a claim for arrearages for any lease or contract assumed hereunder must provide the amount of such arrearages to the Debtor within **twenty (20) days** after Confirmation of the Plan.

**7.6.  Rejection Claim**

Any Claim based upon a rejected contract or lease shall be required to be filed on or before **twenty (20) days** subsequent to the Effective Date of the Plan or such Claim shall be deemed barred.  Such as otherwise set forth in this Plan, all such Claims shall be under and pursuant to and subject to the provisions of Section 365 of the Code.

**ARTICLE VIII**
**PROCEDURE FOR RESOLVING DISPUTED CLAIMS**

**8.1.  Objections to Claims.**

The Debtor reserves the right to object to any Claims as filed with the Court.  The time period for the Objections to Claims may be set by the Court at the Confirmation Hearing or at such other date.  Any Objections shall be served upon the holder of the Claim to which an Objection is made.

**8.2.  Prosecution of Pending Objections to Claims.**

Objections to Claims that are pending as of the Confirmation Date, or were made after the Confirmation Date, shall be prosecuted after the Confirmation Date.  The objecting party shall have the discretion to litigate to judgment, settle or withdraw Objections to disputed Claims.

**8.3.  Payment of Disputed Claims.**

Except as may be otherwise agreed with respect to any disputed Claim, no payments shall be paid with respect to all or any portion of a disputed Claim unless and until all Objections to such disputed Claim have been determined by a final Order.  Payments and distributions to each holder of a disputed Claim, to the extent that it ultimately becomes an allowed Claim shall be made in accordance with the provisions of this Plan.  Upon resolution of the disputed Claim, final distribution to such Claim holder, pro rata, shall occur.  The Debtor reserves the right to propose a payment schedule as to any such disputed Claim which differs from that of other unsecured Claim holders.

**8.4.  Payments to Unsecured Creditors.**

Payments to Unsecured Creditors shall occur through the Disbursing Agent, which shall be permitted to impose a reasonable charge upon the distribution to unsecured creditors for such services.

Case 1:19-bk-03915-HWV    Doc 143    Filed 08/24/20    Entered 08/24/20 13:38:55    Desc
Main Document      Page 24 of 39

# ARTICLE IX
# RETENTION AND ENFORCEMENT OF CLAIMS
# BELONGING TO THE ESTATE

**9.1.**

All preference Claims pursuant to Section 547 of the Code, all fraudulent transfer Claims pursuant to Section 548 of the Code, all Claims relating to post-Petition transactions under Section 549 of the Code, all Claims recoverable under Section 550 of the Code, all Claims against a third party on account of an indebtedness, and any other Claims and/or Causes of Action owed to or in favor of the Debtor, are hereby preserved and retained for enforcement subsequent to the Effective Date of the Plan, whether initiated prior to the Effective Date or not.

# ARTICLE X
# CONFIRMATION REQUEST

**10.1. Impaired Classes to Vote.**

Only Classes of creditors and interest holders that are impaired shall be entitled to vote as a Class to accept or reject the Plan. Those Classes of creditors which are not impaired or are not classified, that is Classes 1, 2 and 3, shall not be permitted to vote on the Plan.

**10.2. Acceptance by a Class of Creditors.**

A Class of creditors shall have voted to accept the Plan if the Plan is accepted by creditors of such Class that holds at least two-thirds (2/3) of the aggregate dollar amount, and more than one- half (½) in number of the allowed Claims of creditors of such Class that vote to accept or reject the Plan.

Case 1:19-bk-03915-HWV    Doc 143    Filed 08/24/20    Entered 08/24/20 13:38:55    Desc
Main Document      Page 25 of 39

**10.3. Confirmation Request.**

If one or more impaired Classes of Claims or interests fails to accept the Plan under Section 1126 of the Code and all of the applicable requirements of Section 1129(a) of the Code have been satisfied other than Section 1129(a)(8) of the Code, the Debtor requests that the Court confirm the Plan pursuant to the provisions of Section 1129(b) of the Code as it applies to Claims and Interests. Further, in the event that the Class 7, Unsecured Creditors, has not accepted the Plan in the requisite numbers which are necessary and required under Section 1126 of the Code, then as part of the confirmation process and in a motion to request confirmation, the Debtor may make available to other parties the right to bid for the equity of the Debtor in its assets, provided that any such bid is on certain terms and conditions. Included in such terms and conditions may be the requirement that any guaranty by the current equity holders of the Debtor's obligations to its various secured creditors be removed or replaced by new obligors. Any such acquisition of the equity will also have the requirement that any payment by such acquiring party indemnify the Debtor as to secured debt. These requests will be part of the procedure under the Confirmation process in the event that the requisite number of votes under Section 1129 of the Code in favor of the Plan does not occur.

**ARTICLE XI**
**DISCHARGE**

**11.1.**

**11.1.1** In the event that all allowed Claims are paid under the Plan, pursuant to Section 1141 of the Bankruptcy Code, all debts and Claims shall be discharged as of the

Case 1:19-bk-03915-HWV   Doc 143   Filed 08/24/20   Entered 08/24/20 13:38:55   Desc
Main Document      Page 26 of 39

Effective Date. Nonetheless, if payment in full of all allowed Claims as set forth under the Plan does not occur, pursuant to Section 1141 of the Bankruptcy Code, no discharge is to be granted.

**11.1.2** Section 1141(c) of the Bankruptcy Code provides, among other things, that property dealt with by the Plan is free and clear of all claims or interests owed by or against the Debtor. As a result, no person or entity holding a Claim, or an equity interest, may receive any payment from, or seek any recourse against, any assets that are to be distributed under the Plan other than assets that may be and are required to be distributed to that person under the Plan.

**11.1.3** All creditors are limited, pursuant to Section 1141 of the Code, and pursuant to this Plan, to the remedies provided by this Plan and the Code for all Claim holders and equity holders, including contingent and disputed Claims which are not otherwise allowed Claims, and including any lease or executory contract rejection Claims. Nothing contained in this Plan shall discharge the debt or obligation of any other entity, including any guarantor of any Debtor obligation of the Debtor, except to the extent any party agrees otherwise.

**ARTICLE XII**
**INJUNCTION**

**12.1.**

**All creditors of the Debtor are limited, pursuant to Section 1141 of the Code, to the treatment provided by this Plan and the Code for all Claim holders and equity holders, including contingent and disputed Claims which are not otherwise Allowed**

Claims. Further, as of the Effective Date, this Plan shall act as an injunction against and shall enjoin all holders of a debt held by a Claim holder, whether or not (i) a proof of Claim based on such debt is filed or deemed filed under Section 501 of the Code; (ii) such Claim is allowed under Section 502 of the Code; or (iii) the holder of such Claim has accepted the Plan; from seeking payment of such Claim from the Debtor, other than as set forth in this Plan. The remedy for the breach of a provision of this Plan shall be an action in this Bankruptcy Court. The stay shall remain in effect as to any action against the Debtor through the Effective Date, when it is replaced by the injunction in this Section and Sections 524(a) and 1141 of the Code; and Claim holders are limited to the remedies set forth herein, under the Code and under applicable law. In the event that any Claim holder believes that a debt has not been paid as required under the Plan, such Claim holder is limited to remedies as provided under the Bankruptcy Code and applicable law.

Further, in the event of non-payment under this Plan, no default may occur until after the expiration of twenty (20) days after receipt of notice of such non-payment has been received by the Debtor and its counsel, Cunningham, Chernicoff & Warshawsky, P.C., Debtor's counsel, without cure of the non-payment. Such notice is to be forwarded to Debtor's counsel at the address set forth at the end of this Plan.

## ARTICLE XIII
## REVESTING

**13.1.**

On the date Effective Date, the Debtor shall be revested with all of its property then existing, free and clear of all Claims, liens and encumbrances arising prior to the date of the entry of the Confirmation Order, except as limited by Article V of the Plan. Under the Plan, S&T Bank retains its lien in the Debtor's Personal Property and in certain specific equipment. Change Capital Holdings I, LLC retains its lien in the Debtor's Personal Property subject to prior liens and to purchase money financing. Komatsu Financial Limited Partnership and Ally Financial shall retain their respective liens in their equipment as set forth under the Plan.

## ARTICLE XIV
## PROFESSIONALS

**14.1.**

The Class 1 professional administrative Claim holders are believed to be Cunningham, Chernicoff & Warshawsky, P.C., counsel to the Debtor. Final fee applications of all professionals must be filed within sixty (60) days after the Effective Date or fee claims may be deemed barred.

**14.2.**

All allowed costs of administration for professionals shall be paid as set forth in Section 4.1 of the Plan. All professionals employed by the Debtor may be employed and be entitled to compensation for their services after the Effective Date pursuant to the terms of this Plan. To the extent that any services have been performed by professionals

subsequent to the Effective Date of this Plan or the Debtor or Asset Administrators employ new professionals Post-Effective Date, such services and payments will not be subject to the review and approval of the Court. All reasonable fees for professionals for services rendered post-Effective Date shall be paid in the ordinary course.

**ARTICLE XV**
**MISCELLANEOUS**

**15.1.**

The Debtor will file a Motion to Fix Bar Date as to Claims. Notice of such Bar Date Motion will be provided to creditors.

**15.2.**

The "Effective Date of the Plan" will be the first day of the calendar month following sixty (60) days after the Confirmation Order becomes final, and shall not have been reversed, stayed, or adversely modified or amended. Such date shall be subject to the right of the Debtor to request that the Court extend the Effective Date. The Debtor will provide notice of the Effective Date on the docket as well as notice as to when the Effective Date has been extended, if such extension occurs. The Debtor shall provide notice of the Effective Date on the Court's docket within five (5) days after the occurrence of the Effective Date.

**15.3.**

Upon the occurrence of the Effective Date, the Debtor, its creditors and Claim holders, and equity interest holders shall be legally bound by the Plan, whether or not they have accepted the Plan.

**15.4.**

The transfer of any assets including any real estate, if any, after Confirmation of the Plan, shall constitute a transfer under this Plan within the purview of Code Section 1146(a) and shall not be subject to transfer, stamp or similar taxes under any law. Any transfer which has been consummated prior to confirmation of the Plan shall not be exempt from transfer, stamp or similar taxes.

**15.5.**

Notwithstanding anything else set forth in the Plan, all quarterly fees due and owing to the United States Trustee under 28 U.S.C. §1930 for the period of time up to Confirmation shall be paid in full by the Effective Date. All quarterly fees payable to the U.S. Trustee for the period after Confirmation of the Plan shall be paid when due until the case is converted, dismissed or closed, whichever first occurs.

**15.6.**

The Debtor may seek as soon as possible, upon proper Motion, for the closing of the case in accordance with the provisions of the Bankruptcy Code and dependent upon the activity in the case and as to the Plan. Until such time as the Court, upon Motion, orders the closing of the case, the Debtor shall be subject to such provisions as are relevant as to the payment of quarterly fees to the Office of the U.S. Trustee.

**15.7.**

Any and all Claims which are listed in the Bankruptcy Schedules as disputed, contingent or unliquidated, and for which no proper Proof of Claim has been filed prior to a claims bar date, shall be disallowed, and shall not be entitled to vote on the Plan, including

any rejection Claims on account of any leases or executory contracts.  Notwithstanding the foregoing, nothing in this Section shall effect the disallowance of any claim filed pursuant to Section 7.6 of this Plan.  If there is an objection pending as to a Claim when voting is to occur, such Claim holder shall not have its Claim considered for voting purposes until such Claim is allowed by the Court.  Further, the Notice and Order approving the Disclosure Statement may contain therein a notice providing for a bar date for the filing of a proper Proof of Claim.

**15.8.**

Any Class that is unimpaired or not classified shall not vote on the Plan.  The Debtor, at its option, shall not be required to send a Disclosure Statement and Plan to Claim holders in any unimpaired Class, but may send informational copies if the Debtor so desires.

**15.9.**

Any amount set forth by a Claim holder on any ballot solicited in this case and voted by a Claim holder shall not be binding upon the Debtor, but rather, the amounts scheduled by the Debtor, if not disputed, contingent or unliquidated, or as set forth in a Proof of Claim filed by a Claim holder, as allowed by the Court, shall control the amount of a creditor's Claim for purposes of voting on the Plan, or distribution under the Plan.  Further, in the event that a creditor sets forth an incorrect Class for its Claim on any ballot voted on this Plan, then the Debtor reserves the right to correct such ballot to set forth the proper Class. Except as previously resolved by a Final Order, the Debtor reserves the right to object to any and all Claims filed in this Case, including any late filed Claims, which Claims are

Case 1:19-bk-03915-HWV    Doc 143    Filed 08/24/20    Entered 08/24/20 13:38:55    Desc
Main Document      Page 32 of 39

filed after the bar date established by the Court. **Unless a Court Order provides otherwise, late filed Claims will not share in any distribution under the Plan.**

**15.10.**

Except to the extent that the Code is applicable, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the Commonwealth of Pennsylvania or the Bankruptcy Code, as is applicable.

**15.11.**

In the event and to the extent that any provision of the Plan is inconsistent with the provisions of the Disclosure Statement, the provisions of the Plan shall control and take precedence, subject, however, to any Order previously entered in this Case.

**15.12.**

The automatic stay of 11 U.S.C. §362 shall remain in effect as under Section 12.1 of the Plan and subject to the injunction set forth in Section 12.1 of the Plan, and under the Bankruptcy Code.

**15.13.**

After the Confirmation Date, but before substantial consummation, the Debtor may, and so long as it does not materially and adversely affect the interests of any claimant, and does not modify the Plan such that the requirements of 11 U.S.C. §§1122 and 1123 are not met, remedy any defect or omission, or reconcile any inconsistencies in the Plan or in the Order Confirming the Plan, and such matters as may be necessary to carry out the purposes and effect of the Plan and without leave of the Court, except as required by the Plan or the Code.

**15.14.**

After the Effective Date, the Debtor may take such actions as necessary to effectuate the Plan without leave of Court, except as required by the Plan or the Code.

**15.15.**

**Pursuant to Sections 105, 524, or 1141 of the Bankruptcy Code, upon the Effective Date, Debtor's counsel and professionals shall be deemed released and held harmless in connection with any Claims, charges or liabilities arising directly or indirectly in connection with their service during the Chapter 11 cases, or the representation of the Debtor, except to the extent such liability arose out of fraud, gross negligence, willful or reckless conduct.**

**15.16.**

**The Debtor and its employees or agents (including the current professionals and any other professionals retained by such persons) shall have no liability to any holder of a Claim or equity interest for any act or omission in connection with, or arising out of the formulation of the Plan, the pursuit of approval of the Disclosure Statement for the Plan, or the solicitation of votes for or confirmation of the Plan, the consummation of the Plan, or the administration of the Plan or the property to be distributed under the Plan, except for willful misconduct or gross negligence and, in all respects, shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under the Plan. Nothing contained in this Section shall be deemed to cause a release of any personal guarantee of any party, as to any of the**

**Claims against the Debtor, to the extent that such exist.  The Release contained herein**

**is intended to be only with respect to the Plan and Disclosure Statement process.**

**15.17.**

For purposes of payments under the Plan to all Claim holders, the Disbursing Agent

shall be the Debtor's counsel, Robert E. Chernicoff, or a substitute attorney from his law

firm, with respect to unsecured creditors.  Counsel may charge a reasonable fee for

disbursement, not to exceed ten percent (10%) of all monies disbursed.

**15.18.**

Any distribution under the Plan that is returned as undeliverable shall be retained

by the Debtor after any applicable period of time for retention has expired.  If a distribution

is returned as undeliverable, the Debtor shall use its reasonable, best efforts to obtain

updated contact information for the effected creditor.

## ARTICLE XVI
## PRIOR ORDERS OF THE BANKRUPTCY COURT

**16.1.**

Prior Orders of the Bankruptcy Court in the Chapter 11 case shall continue in force

and remain effective, to the extent not inconsistent herewith.

## ARTICLE XVII
## MODIFICATION OF THE PLAN

**17.1.  Before Confirmation.**

At any time prior to Confirmation, and prior to substantial confirmation, the Debtor

may propose amendments or modifications of the Plan at any time, but such modification

may not cause the Plan, as modified, to fail to meet  the requirements of Sections 1122 and

35

1123 of the Bankruptcy Code. If the Debtor files a modification or amendment with the Bankruptcy Court, the Plan as modified or amended shall become the Plan.

**17.2. After Confirmation.**

At any time after Confirmation, and prior to substantial consummation, the Debtor may, and so long as it does not materially or adversely affect the interests of creditors, remedy any defect or omission, or reconcile any inconsistencies in the Plan, or in the Order of Confirmation, in such manner as may be necessary to carry out the purposes and effect of the Plan. Further, the Debtor may, with approval of the Court, after notice and hearing, modify or amend the Plan to the extent it may materially or adversely affect creditors, and if the Court confirms such Plan as modified or amended, such modified or amended Plan shall become the Plan. Any modification must comply with the requirements of Section 1129 of the Code, and the modified Plan shall not be permitted to the extent that the Plan does not meet the requirements of Sections 1122 and 1123 of the Code. Further, the Debtor shall, to the extent necessary, comply with Section 1125 of the Code.

**ARTICLE XVIII**
**JURISDICTION OF THE COURT**

**18.1.**

The United States Bankruptcy Court for the Middle District of Pennsylvania will retain jurisdiction until this Plan has been fully consummated, or as otherwise Ordered by the Court, notwithstanding the administrative closing of the Chapter 11 Case, including, but not limited to the following purposes:

Case 1:19-bk-03915-HWV    Doc 143    Filed 08/24/20    Entered 08/24/20 13:38:55    Desc
Main Document      Page 36 of 39

(a)   The classification of the Claim of any creditor and the re-examination of Claims which have been allowed in this case, and the determination of such objections as may be filed to creditors' Claims including as to the amount of any Claim or Administrative Claim.  The failure by the Debtor to object to, or to examine any Claim for the purposes of voting on any plan, shall not be deemed to be a waiver of the Debtor's right to object to, or re-examine the Claim in whole or in part.

(b)  Determination of all questions and disputes regarding title to the assets of the Debtor's estate, and determination of all causes of action, controversies, disputes, conflicts, whether or not subject to action pending as of the date of confirmation, between the Debtor and any other party, including, but not limited to any right of the Debtor to recover assets, including accounts receivable, preferences and fraudulent conveyances, pursuant to the provisions of the Bankruptcy Code.

(c)   The correction of any defect, the curing of any omission, or the reconciliation of any inconsistency in this Plan or the Order of confirmation as may be necessary to carry out the purposes and intent of this Plan.

(d)   The modification of this Plan after confirmation pursuant to the Bankruptcy Rules and the Bankruptcy Code and pursuant to this Plan.

(e)  To enforce and interpret the terms and conditions of this Plan.

(f)  To approve, if necessary, the sale of any assets of the Debtor upon such terms and conditions to be set forth in the proposed sale.

(g)  To enter any order, including injunctions, necessary to enforce the title, rights, and powers of the Debtor and to impose such limitations, restrictions, terms, and conditions of such title, rights, and powers as this Court may deem necessary, and to enforce the terms and provisions of this Plan.

(h)  To determine any and all applications, motions, adversary proceedings and contested matters, whether pending before the Court on the Effective Date,  or filed or instituted after the Effective Date, including, without limitation, proceedings to recover voidable transfers under the Code or other applicable law.

Debtor:
**INFRASTRUCTURE SOLUTION
SERVICES, INC.**

By: _____ , President

Date: **08/24/2020**

Debtor's Counsel:

Robert E. Chernicoff, Esquire
CUNNINGHAM, CHERNICOFF & WARSHAWSKY, P.C.
2320 North Second Street
P.O. Box 60457
Harrisburg, PA 17106-0457
(717) 238-6570